

SEP 27 1999

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UMAR IBN CC COOK,

               Plaintiff,

     v.

COCHRAN, INC.,

             Defendant.

NO. C98-1127R

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

THIS MATTER comes before the court on defendant's motion for summary judgment on a Title VII claim of religious discrimination and plaintiff's motion to strike hearsay.  Having considered the papers filed in support of and in opposition to the motions, the court denies defendant's summary judgment motion and strikes plaintiff's motion as moot.[1]

---

[1]     The court found it unnecessary to consider the challenged material in deciding the summary judgment motion.

ORDER
Page - 1 -

I.   BACKGROUND

Plaintiff Umar Cook is a practicing Muslim.  In May 1997, he was employed by defendant Cochran, Inc. to work as a stockman.  A stockman's duties include supplying electricians with materials and tools throughout the day, offloading materials from trucks and storing the materials, and cleanup.  Cook's work shift ran from 7:30 a.m. to 3:30 p.m.

Several days after he started work, Cook told his foreman that he needed to attend a mandatory prayer service on Friday afternoons, the Juma prayer.  Such prayer services would take him away from the job from approximately 1:00 p.m. to 2:30 p.m. Although the Juma prayer takes place every week, Cook believed that he might be able to attend less frequently.  While serving in the military, he attended once every three weeks in consideration of his frequent travels.  He, therefore, asked his foreman for time off every third Friday afternoon and told him that he would consult with the Imam of his mosque to confirm whether this was sufficient.  Cook's foreman approved this absence once every three weeks as an informal arrangement, but told Cook that if he needed to attend more frequently, Cook would have to speak to upper management.

Cook consulted with his Imam and was told that as long as Cook was in the city, no longer a traveler, and healthy, he was required to attend the Juma prayer every Friday.  He then wrote a

ORDER
Page - 2 -

1    letter to Cochran's Personnel Manager requesting this religious
2    accommodation; this letter was routed to Cochran's General
3    Manager.  Cook was terminated by the General Manager the next day.
4    Months later, Cochran refused to hire Cook when the union hall
5    sent Cook to Cochran on two separate occasions.

## II.  DISCUSSION

Cook contends that Cochran violated Title VII, 42 U.S.C.
§ 2000e-2(a)(1), because it terminated him without attempting to
accommodate his religious practice, and then refused to hire him
due to his religious practice.  The Ninth Circuit applies a two-
part framework to review claims of religious discrimination under
Title VII.  First, the employee has the burden to establish a
prima facie case of religious discrimination.  Balint v. Carson
City, Nev., 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc).  Sec-
ond, if the employee has proven a prima facie case, the employer
then has the burden to show either (a) that it attempted to rea-
sonably accommodate the employee's religious beliefs, or (b) that
any accommodation of the employee's needs would result in undue
hardship.  Id. at 1050-51.

For purposes of summary judgment, Cochran concedes that Cook
can prove a prima facie case.  It asserts, however, that it at-
tempted to reasonably accommodate Cook's beliefs and that any
accommodation would have resulted in undue hardship.  Under Fed.

ORDER
Page - 3 -

AO 72
(Rev 8/82)

1  R. Civ. P. 56(c), summary judgment should be granted if, viewing
2  the evidence in the light most favorable to the nonmoving party,
3  there is no genuine issue of material fact such that the moving
4  party is entitled to judgment as a matter of law.  See Margolis v.
5  Ryan, 140 F.3d 850, 852 (9th Cir. 1998).

6      A.  Attempts at Reasonable Accommodation

7      Once an employee proves a prima facie case under Title VII,
8  the burden shifts to the employer to show that it undertook "some
9  initial step to reasonably accommodate the religious belief of
10 that employee."  Heller v. EBB Auto Co., 8 F.3d 1433, 1440 (9th
11 Cir. 1993) (quoting American Postal Workers Union v. Postmaster
12 Gen., 781 F.2d 772, 776 (9th Cir. 1986)).  This means, at a mini-
13 mum, that the employer negotiate with the employee toward these
14 ends.  Id.  Cochran asserts that it engaged in such negotiation
15 because Cook's foreman approved Cook's absence from work on every
16 third Friday.  This assertion is unconvincing.
17

18 It is undisputed that the arrangement between Cook and his
19 foreman was informal and was not made on behalf of Cochran or with
20 Cochran's authorization.  The foreman did not discuss with manage-
21 ment how to accommodate Cook's request; he simply relayed Cook's
22 letter and said that Cook needed time off for religious prayer.
23 Cochran's management never proposed the foreman's or any other
24 plan to Cook before he was terminated.  The record indicates that
25 the General Manager may not have discussed reasonable accommoda-
26

ORDER
Page - 4 -

tions with <u>anyone</u>, including Cook, before making the unilateral decision to terminate him.

The court finds that there is an issue of material of fact regarding Cochran's attempts at reasonable accommodation.

B.   Undue Hardship

An employer need not show an attempt to reasonably accommodate an employee's religious practice if it can show that any accommodation would impose undue hardship.  <u>Heller</u>, 8 F.3d at 1440.  The Ninth Circuit recently summarized this standard succinctly:

> [A]n accommodation results in undue hardship when there
> is more than a de minimis cost to the employer, which
> could include "additional costs in the form of lost
> efficiency or higher wages."  Undue hardship may also be
> present when an accommodation would cause more than a de
> minimis impact on coworkers, such as depriving coworkers
> of seniority rights or causing coworkers to shoulder the
> plaintiff's share of potentially hazardous work.

<u>Balint</u>, 180 F.3d at 1054 (citations omitted).  Further, "[w]hat constitutes undue hardship must be determined within the particular factual context of each case."  <u>Id.</u>

Cochran forwards numerous accommodations that might have resulted in undue hardship.  For example, Cochran contends that allowing Cook to work after-hours or otherwise rearrange his work hours would have cost more than a de minimis amount of money, resulted in job inefficiencies, resulted in higher wages to at least two employees, created an undue hardship on his co-workers,

ORDER
Page - 5 -

1   and created a hardship on the conduct of Cochran's business.

2       The record indicates, however, that Cochran may have diffi-
3   culty proving that there was no practical accommodation.  For
4   example, Cochran contends that because Cook, as a stockman, was
5   required to be on call to the electricians, any time during which
6   he could not be available in this way would have resulted in undue
7   hardship.  Yet Cook's unrebutted testimony shows that he was
8   unavailable for such calls several times a day while offloading
9   and storing materials from delivery trucks, during which time the
10  electricians sought materials themselves; that he was expected to
11  travel off-site for the job; and that his time on Friday was spent
12  primarily cleaning up the site.  Further, Cochran apparently con-
13  cedes that the plan forwarded by Cook's foreman, time off every
14  third Friday, would have had a de minimis impact; it fails to
15  explain how time off every Friday would have added significantly
16  to this de minimis burden.
17

18      Similarly, Cochran contends that, for safety reasons, it
19  would have had to hire an electrician to supervise any work that
20  Cook did after hours.  It does not explain why such a step would
21  have been necessary if Cook engaged primarily in after-hours
22  cleanup for 1 ½ hours, one day a week.  Cochran also contends that
23  it would have had to pay Cook overtime for any hours that he made
24  up outside of the "continuous" eight hours (excluding a 30-minute
25  lunch) that constitute a "normal" work shift under the collective
26

ORDER
Page - 6 -

bargaining agreement.  It is not apparent from the record whether

this interpretation is proper or is invoked "as a shield against

its statutory obligation to reasonably accommodate its employees'

religious needs."  EEOC v. Hacienda Hotel, 881 F.2d 1504, 1513

(9th Cir. 1989).  Under Cochran's interpretation, most forms of

flexible scheduling recommended by the EEOC would violate the

collective bargaining agreement.  See, e.g., 29 C.F.R.

§ 1605.2(d)(1)(ii) (recommending, among other things, flexible

work breaks, use of lunch time in exchange for early departures,

staggered work hours, and permitting employee to make up lost

time).  Although Cochran asserts that this is how the collective

bargaining agreement is "normally" construed, it has never before

applied the provision in terms of religious accommodation and has

never sought the guidance of the union on this issue.  Even if one

accepts this contention, however, other accommodations in work

schedule may have existed, such as fewer hours worked for less

pay.[2]

---

[2]     Cochran argues that the court should not consider this
alternative because Cook "submits no sworn affidavit or other
affirmative evidence that he actually would have agreed to this
option if it had been offered to him."  (Defendant's Reply Brief,
at 5-6.)  This assertion reverses the burden of persuasion.  The
defendant must prove that no accommodation was possible without
undue hardship.  EEOC v. Townley Engineering & Mfg. Co., 859 F.2d
610, 615 (9th Cir. 1988); cf. 29 C.F.R. § 1605.2(d) ("These [means
of accommodating] are not intended to be all-inclusive.  There are
often other alternatives which would reasonably accommodate an
individual's religious practices when they conflict with a work
schedule.").  The record here indicates that Cook may have had no

ORDER
Page - 7 -

1    The court finds that defendant has not satisfied its burden

2  to show that any accommodation would have resulted in undue hard-

3  ship.

4

5                          III.   CONCLUSION

6    The court finds that genuine issues of material fact exist.

7  Defendant's motion for summary judgment [docket 35-1] is, there-

8  fore, DENIED.  Plaintiff's motion to strike hearsay [45-1] is

9  STRICKEN as moot.

10    DATED at Seattle, Washington this 27th day of September, 1999.

11

12

13                          _Barbara J Rothstein_
                           BARBARA JACOBS ROTHSTEIN
14                         UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24  _____

25  opportunity prior to termination to propose any form of
    accommodation; that lack of opportunity was entirely within
26  Cochran's control.

    ORDER
    Page - 8 -

AO 72
(Rev 8/82)